
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| **JEREMY DANDRE PYLES,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | 7:22-cv-00805-LSC |
| **KIMBERLY MCALPINE,** | ) | |
| Director of Taylor Hardin Secure | ) | |
| Medical Facility, and **STEVE** | ) | |
| **MARSHALL,** Attorney | ) | |
| General for the State of | ) | |
| Alabama, | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM OF OPINION**

Before this Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner Jeremy Pyles, a psychiatric patient committed to the Alabama Department of Mental Health and Mental Retardation and residing at Taylor Hardin Secure Medical Facility in Tuscaloosa, Alabama. Pyles challenges the constitutionality of his continued confinement at Taylor Hardin. Upon due consideration and for the reasons stated herein, this Court finds that Pyles's petition for habeas relief is due to be **DISMISSED** for failure to exhaust state court remedies.

**I.     Background**

In 2017, Pyles reportedly robbed a woman of her cell phone in her front yard, then crossed the street to follow a man into his home, where a witness says he "beat[] that man nearly to death." (Doc. 1 at 57–58.) Evidence showed that Pyles, who was "talking gibberish" and "appear[ed] to be in some sort of zombie-like trance," was shot by the man's family member and later was tased by the police, but neither injury seemed to have had any effect. (*Id.*) It took six to eight police officers around eight minutes to finally subdue him. (*Id.* at 58.) Pyles was charged with third-degree robbery, first-degree burglary, and second-degree assault. (Docs. 10-1 at 1; 10-2 at 1; 10-3 at 1.)

Following mental evaluations and pursuant to a joint motion filed by the prosecution and defense, Pyles was found not guilty by reason of mental disease or defect. (Doc. 1 at 24.) An emergency room physician initially diagnosed him with schizophrenia with religious paranoia and acute psychosis. (*Id.* at 59.) A second physician diagnosed him with bipolar disorder. (*Id.*) In April of 2019, the Circuit Court of Calhoun County, Alabama, committed Pyles to the custody of the Alabama Department of Mental Health (the "Department"). (*Id.* at 24.) In its order, the court directed the Department to file a written report if and when it determined that Pyles was no longer dangerous; the court did not order the same upon a determination that Pyles was no longer mentally ill. (*See id.* at 25.)

On August 9, 2020, counsel for the Department filed a "Notice of Proposal to Release with Conditions" under Rule 25.8 of the Alabama Rules of Criminal Procedure, arguing that Pyles had "received maximum benefit of treatment" and that "he should be released from the custody of the Department and [be] conditionally discharged to reside with his father." (*Id.* at 27.) The Department claimed that Pyles "would no longer pose a real and present threat of substantial harm to himself or to others" if certain conditions were imposed upon his release. (*Id.* at 27–28.) Those conditions included that he reside with his father, take all prescribed medications, participate in certain treatment programs, not own or possess weapons, not engage in violent or threatening behavior, and refrain from substance and alcohol use. (*Id.* at 28.) The Department supported its proposal with an affidavit of Marie Glenn, a psychiatrist and a clinical director at Taylor Hardin, who stated that Pyles's then-current diagnosis was brief psychotic disorder, and that a review board had unanimously agreed he should be released. (*Id.* at 32.) The State of Alabama opposed Pyles's release. (*Id.* at 33.)

Almost a year later, the court held a hearing on the Department's Notice of Proposal to Release.[1] (*Id.* ¶ 12.) Dr. Marie Webb, a psychiatrist at Taylor Hardin,

---

[1] A transcript of the hearing reveals that the hearing was delayed due to issues related to the COVID-19 pandemic. (Doc. 1 at 41.)

testified as an expert on behalf of the Department. (*Id.* ¶ 13.) She stated that Pyles's "current working diagnosis" was that he had a "brief psychotic episode," a disorder that usually resolves within a month of onset. (*Id.*) Indeed, Pyles's disorder purportedly "resolved itself within a month, despite the severity of [his] symptoms." (*Id.* at 50–51.) According to Dr. Webb, Pyles had no incidences of violence, no delusions or hallucinations, no mood swings, and showed no other odd or inappropriate behavior since his arrival at Taylor Hardin. (*Id.* at 47.) This, she noted, was despite Pyles not having taken any psychiatric medication during the two years he had been at Taylor Hardin. (*Id.* at 51–52.)

On cross-examination, the prosecution highlighted the violent nature of Pyles's offenses and questioned both the adequacy of the proposed conditional release plan and the likelihood that Pyles would comply with its terms. (*Id.* at 57–59, 64–71.) The prosecution also attempted to challenge Dr. Webb's diagnosis of Pyles by noting that, including her, "three medical experts" had offered "three different diagnoses" of Pyles. (*Id.* at 59–60.) However, the State offered no expert witness testimony to rebut the Department's evidence that Pyles did not suffer from a mental illness at the time of the hearing. (*See id.* at 37–82.) The hearing concluded with testimony from Pyles's father, who stated he could keep Pyles from using drugs or alcohol, and that he could maintain an environment for Pyles "where the risk of his

mental episodes would be low." (*Id.* at 78–79.) He also agreed to "go across the street to the state probation office" to take a drug screen. (*Id.* at 79.)

Three weeks later, the court denied the Department's request for Pyles's release. (*Id.* at 83.) It found that Pyles posed a "moderate risk of harm" and could not "be trusted not to harm himself or others" if he were released. (*Id.*) It also found the Department's conditional release plan "not acceptable," in part because the plan relied on Pyles's father for accountability, and his father had "failed to appear for the drug test while the [c]ourt was waiting on his return." (*Id.* at 83.) The court made no findings as to whether Pyles still suffered from a mental illness. (*Id.*)

## II.   Standard of Review

A federal district court may consider a petition for a writ of habeas corpus filed on behalf of "a person in custody pursuant to the judgment of a State court" only if that person is in custody "in violation of the Constitution" or federal law. 28 U.S.C. § 2254(a). The district court "shall not" grant the petition unless "the applicant has exhausted the remedies available in the courts of the State" in which the person is held. *Id.* § 2254(b)(1).

A petition may only be granted "with respect to a[] claim that was adjudicated on the merits in State court proceedings," and only if the adjudication of the claim resulted in (1) "a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d). Any "determination of a factual issue made by a State court shall be presumed to be correct." *Id.* § 2254(e)(1). "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

### III. Discussion

Pyles petitions this Court to order his release from Taylor Hardin. He claims that, because he is no longer mentally ill, the state court's refusal to release him violates his right to due process under the Fourteenth Amendment and is contrary to established federal law. Specifically, he contends that the court's decision to keep him confined at Taylor Hardin based on its finding that he remains dangerous but without having determined that he still suffers from a mental illness contradicts long-standing Supreme Court precedent. *See Foucha v. Louisiana*, 504 U.S. 71, 76–77 (1992) ("When a person charged with having committed a crime is found not guilty by reason of insanity" and is committed to a psychiatric hospital, "the acquittee may be held as long as he is *both* mentally ill *and* dangerous, but no longer." (emphasis added)). He also argues that the state court was obligated to release him under Rule

25.8(e) of the Alabama Rules of Criminal Procedure for failing to hold his Rule 25.8 hearing within sixty (60) days of the Department's notice of proposed release. Because Pyles has not exhausted available state court remedies, however, this Court has no authority to grant his petition. 28 U.S.C. § 2254(b)(1).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A habeas petitioner "shall not be deemed to have exhausted" his remedies in state court "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). "[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan*, 526 U.S. at 845. Thus, when a petitioner claims that his continued confinement violates federal law, the courts of the confining state must be given "the first opportunity to review this claim and provide any necessary relief." *Id.* (citing *Rose v. Lundy*, 455 U.S. 509, 515–16 (1982)). "In addition, the state court petition must make the state courts aware that the claims asserted do, in fact, raise federal constitutional issues." *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010) (citing *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998)).

The Attorney General for the State of Alabama argues that Pyles has failed to exhaust his state court remedies because he has made no attempt to seek legal remedy in state courts on his own behalf. The Court agrees. *See Bentley v. Alabama Dep't of Mental Health*, No. 7:15-CV-0084-MHH-JEO, 2020 WL 362884, at *3 (N.D. Ala. Jan. 22, 2020) (finding state remedies unexhausted where the petitioner "filed nothing in state court seeking his release from Taylor Hardin," explaining that "[o]nly the Alabama Department of Mental Health ha[d] asked the state court to release" him). Pyles responds by arguing that the Department had third-party standing to assert claims on his behalf. This argument fails.

"In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991) (citations omitted). A limited exception to this rule applies where there is, among other things, "some hindrance to the third party's ability to protect his or her own interests." *Id.* at 411. Pyles argues, without citation to authority, that he "may potentially be hindered" from asserting his own interests because he was found not guilty by reason of mental defect. (Doc. 14 at 3.) This bare assertion, however, does not explain how Pyles would later be hindered from arguing that he was no longer mentally ill and, therefore, that he had a constitutional right to release. If, as he claims, he is no longer mentally ill, then

there is no hindrance to his asserting his own constitutional claims. Rule 25.8 addresses this very scenario and expressly provides a mechanism for him to assert these claims on his own behalf.

Even if the Department could satisfy Pyles's obligation to exhaust his federal claims in state court, it failed to do so. Neither the Department nor Pyles raised any federal claims in the state court proceedings below.[2] (*See* doc. 1 at 37–82.) Pyles argues that "the unique posture of a Rule 25.8" hearing, which, "by its very nature, implicated his right not to be involuntarily confined," put the state court on notice of his due process claims. (Doc. 9 at 7.) This Court disagrees. "It is not enough that all the facts necessary to support the federal claim were before the state courts… or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Instead, a habeas petitioner must "present the state courts with the same claim he urges upon the federal courts." *Picard v. Connor*, 404 U.S. 270, 276 (1971). Here, the claim presented to the state court—that Pyles was no longer mentally ill or dangerous—was not "the same claim he urges upon the federal courts," i.e., that his continued confinement is unconstitutional. *Cf. id.* at 278 ("The claim that an

---

[2] The same applies to Pyles's argument, raised here for the first time, that he should have been released after the state court failed to hold a hearing within sixty (60) days of the Department's Notice of Proposal for Release. *See* Ala. R. Crim. P. 25.8(e) ("If a hearing is not held within sixty (60) days of receipt by the court of the notice described in Rule 25.8(c)…, the defendant shall be released forthwith unless, for good cause shown, the hearing is continued for a reasonable time.").

indictment is invalid is not the substantial equivalent of a claim that it results in an unconstitutional discrimination.").

To support his argument that the unique posture of Rule 25.8 hearings put the state court on notice of his constitutional claims, Pyles cites *Hart v. Taylor*, No. 5:10-cv-01209-HGD (N.D. Ala. Aug. 11, 2010), *report and recommendation adopted*, *Hart v. Taylor*, No. 5:10-cv-01209-LSC-HGD (N.D. Ala. Oct. 1, 2010). Like Pyles, Hart was found not guilty of criminal charges by reason of mental disease or defect and was committed to Taylor Hardin. (Doc. 1 at 84.) Years later, the Department filed a petition in state court for his release on the grounds that he was no longer mentally ill. (*Id.* at 86–87.) After the state court denied the Department's petition without finding that Hart was still mentally ill, he filed a habeas corpus petition in federal court. (*Id.* at 92.) The Attorney General argued that Hart failed to exhaust state remedies because "he did not identify his claim in the state court as a federal constitutional claim." (*Id.* at 94.) The court disagreed, concluding that Hart had "'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim." (*Id.* (quoting *Anderson*, 459 U.S. at 6).) In reaching that conclusion, the court noted, as Pyles now highlights, "the unique posture of a Rule 25.8 motion." (*Id.*) Crucially, however, the court also noted that, at the Rule 25.8 hearing, Hart "relied

on federal law, specifically the case of *Foucha v. Louisiana*, to support his claim that he was entitled to be released." (*Id.*)

Hart's reliance on *Foucha* in his Rule 25.8 hearing distinguishes his case from this one. In *Foucha*, the Supreme Court confronted the constitutionality of state law that required a person acquitted by reason of insanity to be committed to a mental institution until he was no longer dangerous, even if he recovered from his mental illness. 504 U.S. at 73. The Court reiterated its prior holdings that a "committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous, … i.e., the acquittee may be held as long as he is both mentally ill and dangerous, but no longer." *Id.* at 77 (citations omitted). Thus, Hart fairly presented the "substance" of his due process claims by urging the state court to apply *Foucha* in his Rule 25.8 hearing. *See Picard*, 404 U.S. 278. Pyles, by contrast, raised no federal claims and cited no federal law in state court. *See Zeigler v. Crosby*, 345 F.3d 1300, 1308 n.5 (11th Cir. 2003) (concluding that the habeas petitioner failed to "present fairly to the state court the federal constitutional question" where the petitioner "ma[d]e no mention of the United States Constitution and cite[d] no federal cases" to the state court).

The course and outcome of the state court proceedings below reflect Pyles's failure to raise the constitutional claims he asserts here. Based on the record before

this Court, it appears that the state court was primarily concerned with the danger Pyles would pose to himself and others upon release. In its order denying his release, the court made several findings on the risk of harm Pyles posed to himself and others but made no findings as to his mental state. (*See* doc. 1 at 83.) This discrepancy, although perhaps error, makes sense in light of the order originally committing Pyles to the custody of the Department: that order contemplated Pyles's release "[u]pon a determination that [he] no longer pose[d] a real and present threat of substantial harm to himself or others," but not upon a determination that he was no longer mentally ill. (*Id*. at 24–25.) Given the constitutionally-flawed premise that Pyles was to be released only when he was no longer dangerous, it is unsurprising that the state court failed to consider the constitutional consequences of his continued confinement. Pyles having challenged in state court his mental illness and risk of harm but not the constitutionality of his continued confinement, therefore, this Court "cannot fault that court for failing also to consider sua sponte whether the [Rule 25.8] procedure denied [him] [due process under] the laws." *Picard*, 404 U.S. at 277.

The Attorney General further contends that, to exhaust his remedies, Pyles must petition the Alabama Supreme Court or the Alabama Court of Criminal Appeals for a writ of mandamus. Pyles disagrees, arguing that a writ of mandamus is

an extraordinary remedy that Alabama courts have never granted on substantive grounds. Although this presents a closer question than whether Pyles erred in failing to assert his constitutional claims in state court, this Court concludes that, given the nature of his claims and the circumstances of this case, Pyles erred in failing to petition for a writ of mandamus.

To give state courts a "full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts," a habeas petitioner must "invoke[e] one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. In some cases, this may include a "petition for discretionary review in the State's highest court." *See id*. However, a petitioner need not invoke (1) "extraordinary remedies" that are (2) "alternatives to the standard review process" if (3) "state courts have not provided relief through those remedies in the past." *Id*. at 844 (citing *Wilwording v. Swenson*, 404 U.S. 249, 249–50 (1971)).

There is no question that a "writ of mandamus is an extraordinary remedy." *Ex parte Butts*, 775 So. 2d 173, 176 (Ala. 2000). And the Parties agree that mandamus is an "alternative[] to the standard review process" because there is no review process for Rule 25.8 hearings. *See Alabama Dep't of Mental Health & Mental Retardation ex rel. McClothan v. State*, 873 So. 2d 1176, 1181 (Ala. Crim. App. 2003)

(dismissing an appeal from a Rule 25.8 motion because "neither the [Criminal Psychopath Release Restriction] Act nor the rule provides for appellate review," and "recommend[ing] that the Department seek legislative action to address appellate review of adverse rulings, a matter that was apparently inadvertently overlooked by the drafters of the Act.").[3][4] Finally, the Parties also agree that Alabama courts have provided relief through writs of mandamus in the past. *See Bentley*, 2020 WL 362884, at *4 n.7 ("[A] petition for writ of mandamus does not satisfy the [third] requirement because Alabama's courts of appeal have provided relief in Rule 25.8 proceedings via writs of mandamus."); *e.g.*, *Ex parte State Dep't of Mental Health & Mental Retardation*, 619 So. 2d 934, 936 (Ala. Crim. App. 1993) (granting petition for a writ of mandamus and ordering the circuit court to "fully comply" with the requirements

---

[3] The court in *McClothan* explained that Rule 25.8 "effectively amend[s] and replace[s] § 15–21–3, the habeas corpus statute, with respect to persons who are committed after the entry of a verdict of not guilty by reason of mental disease or defect." 873 So. 2d at 1180. Because appellate review in Alabama is available only where authorized by statute, and because Rule 25.8 does not provide for appellate review, there is no right to appeal from an order on a Rule 25.8 motion. *See id*.

[4] This Court questions whether a writ of mandamus can be considered an "alternative" to the standard review process where, like here, there is no standard review process. *See O'Sullivan*, 526 U.S. at 844. The complete lack of any review process for Rule 25.8 motions counsels in favor of requiring a petitioner to seek a writ of mandamus to satisfy his exhaustion requirement: this rule would "avoid[] the 'unseemliness' of a federal district court's overturning a state court conviction *without the state courts having had an opportunity to correct the constitutional violation in the first instance*." *Id*. at 845 (emphasis added) (alteration accepted) (citation omitted). However, because the Parties neither brief nor argue this issue, this Court assumes for the purposes of this Opinion that a writ of mandamus is an "alternative[] to the standard review process" for Rule 25.8 motions. *Id*. at 844.

of Rule 25.8). Under *O'Sullivan*, therefore, Pyles must petition for a writ of mandamus before his state remedies are deemed exhausted. 526 U.S. at 844–45.

Pyles argues that, although Alabama appellate courts have granted relief to Rule 25.8 petitioners through writs of mandamus on procedural grounds, they have never done so on substantive grounds. This argument fails for two reasons. First, this Court finds no authority concluding that such a distinction is relevant. Second, a writ of mandamus is by its very nature and purpose designed to correct procedural, rather than substantive, error. *See Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 456 (1958) ("[T]he office of a 'mandamus' is to require the lower court or judge to act, and not 'to correct error or to reverse judicial action.'" (citations omitted)); *see also Ex parte Cox*, 451 So. 2d 235, 239 (Ala. 1983) ("Mandamus will lie to compel the exercise of discretion, but not to compel its exercise in a particular manner except where there is an abuse of discretion."). This purpose is well suited to provide relief on two of the issues that Pyles raises here: the state court's failure to exercise its discretion and find him mentally ill or not, and its failure to release him as allegedly required by Rule 25.8(e).[5] *See id*. Accordingly, Pyles

---

5   Rule 25.8(e) provides:

   RELEASE OF DEFENDANT UPON FAILURE TO HOLD HEARING. If a hearing is not held within sixty (60) days of receipt by the court of the notice described in Rule 25.8(c)…, the defendant shall be released forthwith unless, for good cause shown, the hearing is continued for a reasonable time.

should have petitioned for a writ of mandamus ordering the state circuit court to make the findings that he contends it was obligated to make under Rule 25.8. *Cf. Ex parte Alabama Dep't of Mental Health & Mental Retardation*, 18 So. 3d 356, 358 (Ala. 2009) (issuing writ of mandamus directing trial court judge to vacate an order that was inconsistent with the rules governing insanity acquittees).

## IV. Conclusion

For the reasons discussed above, Pyles's petition for a writ of habeas corpus is due to be **DISMISSED**. Because it is not reasonably debatable that Pyles has failed to fairly present his federal constitutional claims in state court and otherwise exhaust available state court remedies, this Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000); Rule 11(a), Rules Governing § 2254 Cases in the U.S. District Courts. Pyles may refile his petition after he has presented his federal constitutional claims to the state courts. The Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** AND **ORDERED** ON MARCH 14, 2024.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
215647